Hearing Date: June 15, 2015
Time: 11:00 a.m.
Location: Utica, New York

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

NIRVANA, INC., *et al.*,[1]

Debtors.

Chapter 11
Case No. 15-60823
Main Case

Jointly Administered

## MOTION FOR ENTRY OF AN ORDER, PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b), AUTHORIZING DEBTOR NIRVANA, INC. TO PAY A PORTION OF THE PREPETITION CLAIM OF TOMRA PACIFIC, INC.

Debtor Nirvana, Inc. ("Nirvana"), a debtor and debtor in possession in the above-captioned chapter 11 cases, by and through its undersigned counsel, Bond, Schoeneck & King, PLLC, hereby moves this Court (this "Motion") for entry of an order, pursuant to §§ 105(a) and 363(b) of title 11 of the United States Code, as amended (the "Bankruptcy Code"), authorizing Nirvana to pay a portion of the prepetition claim (the "Critical Vendor Claim") asserted by TOMRA Pacific, Inc. ("TOMRA"). In support of this Motion, Nirvana respectfully represents as follows:

### JURISDICTION

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Nirvana, Inc. (5474), Nirvana Transport, Inc. (6503), Nirvana Warehousing, Inc. (2646) and Millers Wood Development Corp. (8040).

2510157.1 6/8/2015

2.   Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.   The statutory predicates for the relief requested herein are §§ 105(a) and 363(b) of the Bankruptcy Code.

## BACKGROUND

4.   On June 3, 2015 (the "Petition Date"), Nirvana and its affiliates Nirvana Transport, Inc., Nirvana Warehousing, Inc. and Millers Wood Development (collectively, the "Debtors") filed separate voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of New York (the "Court"), commencing the Debtors' chapter 11 cases (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No request for a trustee or examiner has been made in these Chapter 11 Cases and, as of the date of the filing of this Motion, no official committees have been appointed or designated. The Chapter 11 Cases are being jointly administered pursuant to an order of joint administration entered by the Court on June 4, 2015.

5.   Nirvana is a manufacturer and bottler of spring water that is captured from four[2] natural springs on 1,600 acres of property located in the foothills of the Adirondack Mountains at Forestport, New York. The Debtors are four affiliated companies that each plays a specific functional role in the overall bottling operation. Nirvana is the core business that produces and packages the bottled water. Nirvana Transport, Inc. provides transportation services to Nirvana and other parties. Millers Wood

---

[2] Additional springs may be available for use.

2

Development Corp. is the real estate holding company that owns the 1,600-acre property and Nirvana Warehousing, Inc. provides warehousing services for Nirvana.

6. Nirvana is a closely-held New York corporation with a principal office and place of business located at One Nirvana Plaza, Forestport, New York 13338[3]. Nirvana was formed on June 2, 1995 by brothers Mansur and Mozafar Rafizadeh. Mansur is the chairman and Mozafar is the president and chief executive officer of the company. They each own 50% of Nirvana's common stock, and are assisted in the operation of the company by Chief Financial Officer Edward Wiehl and several managers. Nirvana employs 50 full-time employees at its Forestport location, plus five (5) sales representatives in the downstate New York/New Jersey area, for a total of 55 employees. All employees are non-union.

7. The spring water bottled by Nirvana comes to the surface by its own natural force at 42° Fahrenheit year round and is collected and bottled on site. The springs produce approximately 605,000 gallons of water each day. The water is sold in a number of bottle sizes and configurations, all presented under the company's "Nirvana Natural Spring Water" brand. Nirvana sells its spring water to leading supermarket chains, mass merchandisers, convenience store chains and drug store chains directly and through distributors, predominately in the Northeast United States.

8. The purpose of Chapter 11 Cases is to market and sell the Debtors' businesses as going concerns to a qualified third-party purchaser under § 363 of the Bankruptcy Code.

9. Under the New York State Returnable Container Act, Article 27, Title 10 of the New York Environmental Conservation Law, §§ 27-1001 to 27-1019 and 6 NYCRR

---

[3] The Debtors' physical address is 12044 State Route 12, Boonville, New York 13309.

Part 367 (commonly known as the "Bottle Bill"), "deposit initiators" such as Nirvana are required to collect at least a 5-cent deposit from each of their distributors and dealers (commonly referred to as "retailers") on each beverage container sold to such distributors or dealers in New York State. Consumers pay the dealers/retailers the deposit for each beverage container purchased, and then may return their empty containers to a dealer or a redemption center to get their deposit back. Bottled water has been covered under the Bottle Bill since November 2009.

10. Under the Bottle Bill, deposit initiators are required to collect, or hire a third party to collect, their empty returned containers from the dealers and redemption centers every fourteen (14) days. TOMRA is a materials handling company engaged in the business of, among other things, collecting empty beverage containers from dealers and redemption centers on behalf of the deposit initiators. TOMRA has been engaged by Nirvana since November 2009 to collect Nirvana's returned water containers from approximately 983 redemption centers and over 20 retail grocery chains (with multiple locations) throughout New York State. Nirvana pays TOMRA a fee equal to 9.75 cents per bottle collected (5-cent deposit, plus 3.5-cent collection fee required to be paid to the retailer or redemption center, plus 1.25 cents per bottle collected).

11. In late 2014, Nirvana's obligation to TOMRA for collection fees exceeded $1,000,000. At that time, Nirvana agreed to make payments to TOMRA on the last day of each month in an amount necessary to reduce the outstanding fees to less than $1,000,000 in exchange for TOMRA's agreement to continue collecting empty containers on behalf of Nirvana. Nirvana thereafter complied with this arrangement, but did not make the payment due on May 31, 2015.

12. As of the Petition Date, TOMRA asserts a claim against Nirvana totaling $1,120,088.42. TOMRA has advised Nirvana that it will immediately cease collecting empty containers on behalf of Nirvana if Nirvana does not pay the sum of $120,100 to reduce TOMRA's account balance below $1,000,000, and make weekly payments of $30,000 each to TOMRA to cover the services rendered to Nirvana during the post-petition period[4] (collectively the "Critical Vendor Claim").

A. Nirvana's Need for TOMRA's Services and the Critical Vendor Claim

13. In the ordinary course of operations, TOMRA collects approximately 1,180,000 empty containers each month on behalf of Nirvana and bills Nirvana approximately $115,000 for that service. Nirvana does not have the staff or other resources available to collect all of its empty containers from the redemption centers and retail outlets throughout New York State every 14 days as required by the Bottle Bill. TOMRA's services, therefore, are essential to Nirvana's business operations.

14. If TOMRA refuses to collect Nirvana's empty containers, the redemption centers and retail outlets that currently redeem Nirvana's containers will refuse to accept them from consumers. Nirvana's customers will then stop purchasing Nirvana's products because the consumers will not purchase Nirvana's products if the cannot recover their 5-cent deposits from the redemption centers. Nirvana's water bottling business would be forced to shut down.

15. TOMRA is the only materials handling company in New York State that covers the entire geographic area within which Nirvana sells its products, and its fee is more favorable compared to other companies. At this point, it would be very disruptive

---

[4] The total weekly payments made will be reconciled at the end of each month with the fee due from Nirvana based upon the actual number of empty containers collected.

5

to Nirvana's relationships with its customers and the redemptions centers throughout New York State, and to Nirvana's water bottling business, if Nirvana were required to retain a patchwork of new materials handling companies to collect its empty containers across New York State. Nirvana anticipates that its assets will be sold to a third-party purchaser within the next 3-4 months, so it is imperative that Nirvana maintain its operations as a going concern during that period, without interruption.

B.    Proposed Terms and Conditions of Payment of Critical Vendor Claim

16.    Nirvana proposes that the payment of TOMRA's Critical Vendor Claim in the amount of $120,100 will be conditioned upon TOMRA continuing to collect Nirvana's empty containers from redemption centers and other outlets. The payment in the amount of $120,100 is a one-time payment equal to approximately 10% of TOMRA's outstanding prepetition claim. Moreover, Nirvana has already included the $30,000 weekly payment in its emergency cash collateral budget approved by the Court on June 4, 2015 and will continue to include that payment in all future budgets submitted in these Chapter 11 Cases.

17.    Nirvana is unable to engage another materials handling company in New York State on short notice with the scope of services provided by TOMRA. By this motion, Nirvana seeks the entry of an order authorizing it to make the one-time payment in the amount of $120,100 and make the required post-petition payments to TOMRA, as a critical vendor in this case.

## BASIS FOR RELIEF

18.    The relief requested in this Motion is supported by several provisions of the Bankruptcy Code that authorize a debtor to honor prepetition obligations in certain

6

circumstances. Courts have recognized each of these statutory provisions as valid authority for such payments.

A.     This Court May Authorize Payment of the Critical Vendor Claim Pursuant to §§ 105 and 363 of the Bankruptcy Code

19.     The relief requested in this motion is authorized pursuant to §§ 105 and 363 of the Bankruptcy Code. *See In re UAL Corp.*, Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 11, 2002) (essential trade motion relying upon section 363 of the Bankruptcy Code is "completely consistent with the Bankruptcy Code"). Section 363(b)(1) of the Bankruptcy Code authorizes the trustee to use property of the estate other than in the ordinary course of business after notice and a hearing. Furthermore, the debtor's decision to use property of the estate outside the ordinary course of business must be based upon the debtor's sound business judgment. *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d. Cir. 1992); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d. Cir. 1983). The relief requested in this Motion contemplates payments to be made to a critical vendor who has agreed to provide statutorily-mandated services during the post-petition period and other consideration in exchange for such payment. As a result, the payment of TOMRA's Critical Vendor Claim is consistent with and appropriate under §§ 105 and 363 of the Bankruptcy Code.

20.     Courts in other jurisdictions have granted similar critical vendor relief in other bankruptcy cases. *See, e.g., In re Interfaith Medical Center, Inc.*, Case No. 1:12-bk-48226 (CEC) (Bankr. E.D.N.Y. Dec. 27, 2012); *In re Global Aviation Holdings Inc., et al.*, Case No. 1:12-bk-40783 (CEC) (Bankr. E.D.N.Y. Mar. 8, 2012); *In re The Brown Publishing Co.*, Case No. 8:10-bk-73295 (DTE) (Bankr. E.D.N.Y. May 27, 2010); *In re*

*The Brooklyn Hospital Center and Caledonian Health Center, Inc.*, Case No. 1:05-bk-26990 (CEC) (Bankr. E.D.N.Y. Nov. 3, 2005); *Lyondell Chemical Co.*, Case No. 1:09-bk-10023 (REG) (Bankr. S.D.N.Y. Jan. 23, 2009); *In re Bally Total Fitness of Greater New York, Inc.*, Case No. 1:08-bk-14818 (BRL) (Bankr. S.D.N.Y. Jan. 7, 2009); *In re Frontier Airlines Holdings, Inc.*, Case No. 1:08-bk-11298 (RDD) (Bankr. S.D.N.Y. May 15, 2008); *In re Calpine Corp.*, Case No. 1:05-bk-60200 (BRL) (Bankr. S.D.N.Y. Dec. 21, 2005); *In re Delphi Corp.*, Case No. 1:05-bk-44481 (RDD) (Bankr. S.D.N.Y. Oct. 13, 2005); *In re Delta Air Lines, Inc.*, Case No. 1:05-bk-17923 (PCB) (Bankr. S.D.N.Y. Sept. 16, 2005).

B.  The Court May Rely on the "Necessity of Payment"
    Doctrine and its General Equitable Powers to Grant The Motion

21.  The "doctrine of necessity" or "necessity of payment" rule is a well-settled doctrine that "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re Financial News Network, Inc.*, 134 Bankr. 732, 735-36 (Bankr. S.D.N.Y. 1991) (to invoke the doctrine, debtor must show that the payment is "critical to the debtor's reorganization"). This doctrine is consistent with the paramount goal of chapter 11 – "facilitating the continued operation and rehabilitation of the debtor." *In re Ionosphere Clubs*, 98 B.R. at 176.

22.  The court's general equitable powers are codified in § 105(a) of the Bankruptcy Code, which empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition

debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175. Under § 105(a) of the Bankruptcy Code, a court "can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); *see also In re Chateaugay Corp.*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987).

23. Maintaining access to the services supplied by TOMRA is absolutely critical to the successful administration of Nirvana's chapter 11 case and is in the best interests of Nirvana's estate, its creditors and all parties in interest. Accordingly, Nirvana believes that the Court should exercise its equitable powers to grant Nirvana the authority to pay the Critical Vendor Claim in exchange for TOMRA's agreement to continue collecting the empty containers on behalf of Nirvana during the post-petition period.

## WAIVER OF NOTICE AND STAY REQUIREMENTS

24. To implement the foregoing successfully, Nirvana seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h), 7062, 9014 or otherwise.

## NOTICE

25. Notice of this Motion has been given to (i) TOMRA; (ii) counsel for TOMRA; (iii) the Office of the United States Trustee for the Northern District of New York; (iv) counsel for the Debtors' prepetition secured lenders; (v) Nirvana 20-largest unsecured creditors; and (vi) all entities known to have filed a notice of appearance or a

request for receipt of chapter 11 notices and pleadings filed in the Debtors' cases as of the date hereof.  In light of the nature of the relief requested herein, Nirvana submits that no further notice is required.

### NO PRIOR REQUEST

26.    No prior motion for the relief requested herein has been made to this or any other court.

### CONCLUSION

**WHEREFORE,** for the reasons set forth herein, Nirvana respectfully requests that the Court enter an order authorizing Nirvana to pay TOMRA's Critical Vendor Claim, and granting such other and further relief as the Court deems just and proper.

Dated: June 8, 2015
      Syracuse, New York

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

By:  *Camille W. Hill*
Stephen A. Donato, Esq. Bar Roll No. 101522
Camille W. Hill, Esq., Bar Roll No. 501876
Office and Post Office Address:
One Lincoln Center
Syracuse, New York 13202
Telephone:   (315) 218-8000
Facsimile:     (315) 218-8100

*Proposed Counsel to the Debtors
and Debtors in Possession*