Hearing Date:  June 25, 2015
Time:  10:30 a.m.
Location:  Utica, New York

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

    NIRVANA, INC., *et al*.,[1]

                              Debtors.

Chapter 11
Case No. 15-60823
Main Case

Jointly Administered

## MOTION FOR ENTRY OF AN ORDER, PURSUANT TO
## 11 U.S.C. §§ 105(a) AND 363(b), AUTHORIZING DEBTOR NIRVANA, INC.
## TO PAY PREPETITION CLAIM OF ORTHODOX UNION AS A CRITICAL VENDOR

      Debtor Nirvana, Inc. ("Nirvana"), a debtor and debtor in possession in the above-captioned chapter 11 cases, by and through its undersigned counsel, Bond, Schoeneck & King, PLLC, hereby moves this Court (this "Motion") for entry of an order, pursuant to §§ 105(a) and 363(b) of title 11 of the United States Code, as amended (the "Bankruptcy Code"), authorizing Nirvana to pay the prepetition claim (the "Critical Vendor Claim") asserted by the Orthodox Union.  In support of this Motion, Nirvana respectfully represents as follows:

### JURISDICTION

      1.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Nirvana, Inc. (5474), Nirvana Transport, Inc. (6503), Nirvana Warehousing, Inc. (2646) and Millers Wood Development Corp. (8040).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are §§ 105(a) and 363(b) of the Bankruptcy Code.

## BACKGROUND

4. On June 3, 2015 (the "Petition Date"), Nirvana and its affiliates Nirvana Transport, Inc., Nirvana Warehousing, Inc. and Millers Wood Development (collectively, the "Debtors") filed separate voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of New York (the "Court"), commencing the Debtors' chapter 11 cases (the "Chapter 11 Cases").  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No request for a trustee or examiner has been made in these Chapter 11 Cases and, as of the date of the filing of this Motion, no official committees have been appointed or designated.  The Chapter 11 Cases are being jointly administered pursuant to an order of joint administration entered by the Court on June 4, 2015.

5. Nirvana is a manufacturer and bottler of spring water that is captured from four[2] natural springs on 1,600 acres of property located in the foothills of the Adirondack Mountains at Forestport, New York.  The Debtors are four affiliated companies that each plays a specific functional role in the overall bottling operation.  Nirvana is the core business that produces and packages the bottled water.  Nirvana Transport, Inc. provides transportation services to Nirvana and other parties.  Millers Wood

---

[2] Additional springs may be available for use.

2

Development Corp. is the real estate holding company that owns the 1,600-acre property and Nirvana Warehousing, Inc. provides warehousing services for Nirvana.

6. Nirvana is a closely-held New York corporation with a principal office and place of business located at One Nirvana Plaza, Forestport, New York 13338[3]. Nirvana was formed on June 2, 1995 by brothers Mansur and Mozafar Rafizadeh. Mansur is the chairman and Mozafar is the president and chief executive officer of the company. They each own 50% of Nirvana's common stock, and are assisted in the operation of the company by Chief Financial Officer Edward Wiehl and several managers. Nirvana employs 50 full-time employees at its Forestport location, plus five (5) sales representatives in the downstate New York/New Jersey area, for a total of 55 employees. All employees are non-union.

7. The spring water bottled by Nirvana comes to the surface by its own natural force at 42° Fahrenheit year round and is collected and bottled on site. The springs produce approximately 605,000 gallons of water each day. The water is sold in a number of bottle sizes and configurations, all presented under the company's "Nirvana Natural Spring Water" brand. Nirvana sells its spring water to leading supermarket chains, mass merchandisers, convenience store chains and drug store chains directly and through distributors, predominately in the Northeast United States.

8. The purpose of Chapter 11 Cases is to market and sell the Debtors' businesses as going concerns to a qualified third-party purchaser under § 363 of the Bankruptcy Code.

---

[3] The Debtors' physical address is 12044 State Route 12, Boonville, New York 13309.

9. The Union of Orthodox Jewish Congregations of America, better known as the Orthodox Union ("OU"), is one of the oldest Orthodox Jewish organizations in the United States, and is best known for its kosher certification service. It circled-u symbol is found on the labels of many commercial and consumer food products, including Nirvana bottled water. In addition to permitting the manufacturers of food and beverage products certified as kosher to display its certification symbol on their labels, the OU also maintains a list of approved products on its website and sends email notifications to its members when products are added or deleted from its list of certified kosher products.

10. A large percentage of Nirvana's water products are sold in the Tri-State area of New York City/New Jersey/Connecticut and the mid-Atlantic states where many consumers look for, rely upon, the OU certification symbol when purchasing food and beverage products. If Nirvana is not permitted to display the certification symbol on its bottled water products, many consumers would stop buying Nirvana's products, which in turn would result in fewer orders from Nirvana's customers located in that geographic area. Nirvana would also be required to discard all of its existing labels that display the OU certification symbol and would be required to purchase new labels, at great expense to Nirvana.

11. OU charges food and beverage manufacturers an annual fee for the right to display its certification symbol on their product labels. Nirvana has displayed the OU label on its bottled water products for over ten (10) years, and OU bills Nirvana semi-annually for the right to use its kosher certification symbol. Currently, Nirvana owes OU

$4,505.00 for the period of November 1, 2014 to April 30, 2015, and $4,732.50 for the period of May 1, 2015 to October 30, 2015, for a total amount due of $9,237.50.

12. On June 9, 2015, OU notified Nirvana that it was terminating Nirvana's right to include the OU certification symbol on its products, effective as of June 1, 2015, as a result of Nirvana's failure to pay the annual fee payments totaling $9,237.50. OU also advised Nirvana that it would remove Nirvana's product listing from the OU website and send out an email notification to all of its subscribers notifying them that Nirvana's products were no longer certified as kosher. Nirvana was also directed to remove the OU certification symbol from its existing labels, an action that would be impossible, and would require Nirvana to spend thousands of dollars to purchase new labels that do not bear the OU certification symbol.

The Proposed Terms and Conditions of Payment of Critical Vendor Claim

13. Nirvana proposes to make a single payment in the amount of $9,237.50 to OU immediately following the entry of this Court's order authorizing Nirvana to pay that amount as a Critical Vendor Claim. OU has reinstated Nirvana's authorization to use the OU certification symbol on an interim basis pending this Court's approval of the Critical Vendor Claim. Nirvana will not be required to make another semi-annual payment to OU for the use of its certification symbol until October 2015, which would cover the period of November 1, 2015 to April 30, 2016. Nirvana anticipates that its asset sale will be completed by October 30, 2015, and that the purchaser of Nirvana's assets will contract with OU for use of its certification symbol after the sale closing.

14. Nirvana has the funds available to make the $9,237.50 payment to OU and has included that sum in its proposed interim cash collateral budget submitted to the Court for approval on June 15, 2015.

15. OU's certification is unique and relied upon by many consumers in the geographic area where Nirvana sells the great majority of its products. Nirvana respectfully submits that it is in Nirvana's best interest, and the best interests of its creditors and estate, to pay OU's pre-petition claim totaling $9,237.50 as a Critical Vendor Claim in this case.

## BASIS FOR RELIEF

16. The relief requested in this Motion is supported by several provisions of the Bankruptcy Code that authorize a debtor to honor prepetition obligations in certain circumstances. Courts have recognized each of these statutory provisions as valid authority for such payments.

A. This Court May Authorize Payment of the Critical Vendor Claim Pursuant to §§ 105 and 363 of the Bankruptcy Code

17. The relief requested in this motion is authorized pursuant to §§ 105 and 363 of the Bankruptcy Code. *See In re UAL Corp.*, Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 11, 2002) (essential trade motion relying upon section 363 of the Bankruptcy Code is "completely consistent with the Bankruptcy Code"). Section 363(b)(1) of the Bankruptcy Code authorizes the trustee to use property of the estate other than in the ordinary course of business after notice and a hearing. Furthermore, the debtor's decision to use property of the estate outside the ordinary course of business must be based upon the debtor's sound business judgment. *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d. Cir. 1992); *Committee of Equity Security*

*Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d. Cir. 1983). The relief requested in this Motion contemplates payments to be made to a critical vendor who has agreed to provide statutorily-mandated services during the post-petition period and other consideration in exchange for such payment. As a result, the payment of OU's Critical Vendor Claim is consistent with and appropriate under §§ 105 and 363 of the Bankruptcy Code.

18.  Courts in other jurisdictions have granted similar critical vendor relief in other bankruptcy cases. *See, e.g.*, *In re Interfaith Medical Center, Inc.*, Case No. 1:12-bk-48226 (CEC) (Bankr. E.D.N.Y. Dec. 27, 2012); *In re Global Aviation Holdings Inc., et al.*, Case No. 1:12-bk-40783 (CEC) (Bankr. E.D.N.Y. Mar. 8, 2012); *In re The Brown Publishing Co.*, Case No. 8:10-bk-73295 (DTE) (Bankr. E.D.N.Y. May 27, 2010); *In re The Brooklyn Hospital Center and Caledonian Health Center, Inc.*, Case No. 1:05-bk-26990 (CEC) (Bankr. E.D.N.Y. Nov. 3, 2005); *Lyondell Chemical Co.*, Case No. 1:09-bk-10023 (REG) (Bankr. S.D.N.Y. Jan. 23, 2009); *In re Bally Total Fitness of Greater New York, Inc.*, Case No. 1:08-bk-14818 (BRL) (Bankr. S.D.N.Y. Jan. 7, 2009); *In re Frontier Airlines Holdings, Inc.*, Case No. 1:08-bk-11298 (RDD) (Bankr. S.D.N.Y. May 15, 2008); *In re Calpine Corp.*, Case No. 1:05-bk-60200 (BRL) (Bankr. S.D.N.Y. Dec. 21, 2005); *In re Delphi Corp.*, Case No. 1:05-bk-44481 (RDD) (Bankr. S.D.N.Y. Oct. 13, 2005); *In re Delta Air Lines, Inc.*, Case No. 1:05-bk-17923 (PCB) (Bankr. S.D.N.Y. Sept. 16, 2005).

B.  The Court May Rely on the "Necessity of Payment"
    Doctrine and its General Equitable Powers to Grant The Motion

19.  The "doctrine of necessity" or "necessity of payment" rule is a well-settled doctrine that "recognizes the existence of the judicial power to authorize a debtor in a

reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re Financial News Network, Inc.*, 134 Bankr. 732, 735-36 (Bankr. S.D.N.Y. 1991) (to invoke the doctrine, debtor must show that the payment is "critical to the debtor's reorganization"). This doctrine is consistent with the paramount goal of chapter 11 – "facilitating the continued operation and rehabilitation of the debtor." *In re Ionosphere Clubs*, 98 B.R. at 176.

20. The court's general equitable powers are codified in § 105(a) of the Bankruptcy Code, which empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175. Under § 105(a) of the Bankruptcy Code, a court "can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); *see also In re Chateaugay Corp.*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987).

21. Maintaining its authorization to use OU's kosher certification symbol is absolutely critical to Nirvana maintaining its sale levels in its most important geographic market and therefore, is critical to the successful administration of Nirvana's chapter 11 case. Accordingly, Nirvana believes that it is in the best interests of its estate, its creditors and all parties in interest for the Court to exercise its equitable powers and grant Nirvana the authority to pay the Critical Vendor Claim in exchange for OU's

agreement to authorize Nirvana to continue using OU's certification symbol in the ordinary course of its business.

## WAIVER OF NOTICE AND STAY REQUIREMENTS

22. To implement the foregoing successfully, Nirvana seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h), 7062, 9014 or otherwise.

## NOTICE

23. Notice of this Motion has been given to (i) Orthodox Union; (ii) counsel for Orthodox Union; (iii) the Office of the United States Trustee for the Northern District of New York; (iv) counsel for the Debtors' prepetition secured lenders; (v) Nirvana's twenty largest unsecured creditors; and (vi) all entities known to have filed a notice of appearance or a request for receipt of chapter 11 notices and pleadings filed in the Debtors' cases as of the date hereof. In light of the nature of the relief requested herein, Nirvana submits that no further notice is required.

## NO PRIOR REQUEST

24. Nirvana previously filed a motion seeking authorization to pay a portion of the pre-petition claim of TOMRA Pacific, Inc. in the amount of $120,100.00 as a critical vendor claim in Nirvana's case. No prior motion for the relief requested with respect to OU's pre-petition claim, however, has been made to this or any other court.

## **CONCLUSION**

**WHEREFORE,** for the reasons set forth herein, Nirvana respectfully requests that the Court enter an order authorizing Nirvana to pay Orthodox Union's Critical Vendor Claim in the amount of $9,237.50, and granting such other and further relief as the Court deems just and proper.

Dated: June 15, 2015
      Syracuse, New York      Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

By:    /s/ Camille W. Hill
Stephen A. Donato, Esq. Bar Roll No. 101522
Camille W. Hill, Esq., Bar Roll No. 501876
Office and Post Office Address:
One Lincoln Center
Syracuse, New York 13202
Telephone:  (315) 218-8000
Facsimile:  (315) 218-8100

*Proposed Counsel to the Debtors
and Debtors in Possession*